IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

# CASE NUMBER 25-10936

---

UNITED STATES OF AMERICA,
*PLAINTIFF-APPELLEE,*

V.

DAISHAWN PERRY,
*DEFENDANT-APPELLANT.*

---

ON DIRECT APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

## INITIAL BRIEF OF APPELLANT

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

KEVIN JOEL PAGE
ASSISTANT FEDERAL
PUBLIC DEFENDER
525 South Griffin
Suite 629
Dallas, Texas 75202
(214) 767-2746

*Counsel for Mr. Perry*

## Certificate of Interested Persons for
## *United States v. Perry*, Case No. 25-10936

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellant: | Daishawn Perry |
| Defense Counsel: | Federal Public Defender for the Northern District of Texas<br>AFPD Maria Torres-Chin (district court)<br>AFPD Kevin Joel Page (appeal) |
| Prosecutors: | AUSA Marissa Aulbaugh (district court)<br>AUSA Stephen Gilstrap (appeal) |
| District Judge: | Hon. Ada Brown |

/s/ Kevin Joel Page
Counsel for Appellant

i

**Statement Regarding Oral Argument**

This case involves two important legal issues of first impression, either of which would merit argument: 1) whether former USSG §7B1.1(a)(2), now USSG §7C1.1(a)(2) defines "Grade B Violations" of supervised release to include conduct that is punishable by more than a year's imprisonment only when combined with a defendant's prior conviction, and 2) whether, after *Esteras v. United States*, 606 U.S. 185 (2025), it remains plain error for the district court to consider the retributive purposes of sentencing in respect to the defendant's conduct on supervised release. These issues will surely recur, are squarely presented here, and should be resolved with due deliberation. Argument is therefore appropriate.

## Table of Contents

Certificate of Interested Persons .......................................................................... i

Statement Regarding Oral Argument................................................................... ii

Table of Authorities............................................................................................ iv

Jurisdictional Statement ..................................................................................... 1

Issues Presented for Review .............................................................................. 1

Statement of the Case......................................................................................... 2

Facts and Proceedings Below………………………………………………...…2

Summary of the Argument................................................................................. 5

Argument............................................................................................................ 7

    I.     The district court reversibly erred in concluding that Appellant committed a Grade B Violation of the terms of release……………..….7

    II.    The district court plainly erred in considering the need for the sentence imposed to impose just punishment for the defendant's conduct on supervised release. ……………………..……….….…..20

Conclusion ....................................................................................................... 26

Certificate of Service ....................................................................................... 27

Certificate of Compliance ............................................................................... 27

## Table of Authorities

**Page(s)**

**Federal Cases**

*Esteras v. United States*,
　606 U.S. 185 (2025)..................................................................21, 22, 24, 25

*Molina-Martinez v. United States*,
　578 U.S. 189 (2016).................................................................................25

*Rosales-Mireles v. United States*,
　585 U.S. 129 (2018).................................................................................26

*United States v. Boisjolie*,
　74 F.3d 1115 (11th Cir. 1996) ...............................................12, 15, 18

*United States v. Booker*,
　543 U.S. 220 (2005)..................................................................................7

*United States v. Burney*,
　485 F. App'x 737 (5th Cir. 2012)(unpublished) ....................................8

*United States v. Castro-Alfonso*,
　841 F.3d 292 (5th Cir. 2016) ................................................................22

*United States v. Crace*,
　207 F.3d 833 (6th Cir. 2000) ..........................................12, 15, 16, 18

*United States v. Davis*,
　602 F.3d 643 (5th Cir. 2010) ..................................................................9

*United States v. Dominguez Benitez*,
　542 U.S. 74 (2004)..................................................................................25

*United States v. Herndon*,
　807 F. App'x 286 (5th Cir. 2020).........................................................26

*United States v. Johnson*,
　956 F.3d 740 (5th Cir. 2020) ................................................................26

*United States v. Lee*,
　78 F.3d 1236 (7th Cir. 1996) ...............................................13, 14, 15

*United States v. Miller*,
634 F.3d 841 (5th Cir. 2011) ...........................................................................7, 8

*United States v. Olano*,
507 U.S. 725 (1993)............................................................................................20

*United States v. Perez-Mateo*,
926 F.3d 216 (5th Cir. 2019) ...........................................................................26

*United States v. Rabanal*,
508 F.3d 741 (5th Cir. 2007) ...........................................................................19

*United States v. Ramos*,
979 F.3d 994 (2d Cir. 2020) .....................................................................*passim*

*United States v. Sanchez*,
582 F. App'x 532 (5th Cir. 2014)(unpublished) ..................................................8

*United States v. Sanchez*,
900 F.3d 678 (5th Cir. 2018)..............................................................5, 21, 24, 25

*United States v. Trotter*,
270 F.3d 1150 (7th Cir. 2001) ........................................................12, 15, 16, 17

*United States v. Waldrip*,
783 F. App'x 369 (5th Cir. 2019)(unpublished) ................................................20

*United States v. Wynn*,
786 F.3d 339 (4th Cir. 2015) .........................................................12, 15, 18, 19

## Federal Statutes

18 U.S.C. 3553(a)(2)(A) ...............................................................................22, 24

18 U.S.C. § 922(n) ...............................................................................................2

18 U.S.C. § 924(e) .............................................................................................17

18 U.S.C. § 3231 ..................................................................................................1

18 U.S.C. § 3553(a) ........................................................................................9, 21

18 U.S.C. § 3553(a)(2)........................................................................................21

18 U.S.C. § 3583(e) ...............................................................................21

18 U.S.C. § 3583(e)(3) ..........................................................................21

18 U.S.C. § 3742 ................................................................................1, 7

18 U.S.C. § 3742(a) ................................................................................8

18 U.S.C. § 3742(e) .............................................................................7, 8

18 U.S.C. § 3742(e)(4) ...........................................................................7

28 U.S.C. § 994(o) ................................................................................17

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. § 2106 .....................................................................................8

**United States Sentencing Guidelines**

USSG Ch. 7, pt. C, intro. cmt. ................................................................4

USSG §§ 1B1.3, cmt. (n.(5)(C)) ...........................................................17

USSG § 2K2.1(a)(1)(B) .........................................................................16

USSG § 2K2.1, cmt. (n. 10) ..................................................................16

USSG § 2L1.2(b)(2)(A) .........................................................................16

USSG § 2L1.2, cmt. (n. 3) .....................................................................16

USSG § 4A1.2, cmt. (n.1) ......................................................................17

USSG § 7B1.1 (2024) ......................................................................10, 17

USSG § 7B1.1(a) ..............................................................................13, 19

USSG § 7B1.1(a)(2)(2004) .....................................................................3

USSG § 7B1.1(a)(2)(2024) ......................................................................1

USSG § 7B1.1(a)(2024).....................................................................10, 16

USSG § 7B1.1(b)(2024) ........................................................................14

USSG § 7B1.1, cmt. (n. 1)(2024) .................................................................5, 11, 12

USSG § 7B1.4 .............................................................................................9, 14, 19

USSG § 7C1.1 ........................................................................................................3

USSG § 7C1.1(a) ...................................................................................................5

USSG § 7C1.1(a)(2) ...........................................................................................1, 5

USSG § 7C1.1(b) ................................................................................................14

USSG § 7C1.1, cmt. (n. 1) ....................................................................................5

USSG § 7C1.5 ............................................................................................9, 14, 19

**State Statutes**

Tex. Penal Code § 12.44(a) ..................................................................................3

Tex. Penal Code § 38.04 .....................................................................................15

Tex. Penal Code § 38.04(b) ..................................................................................5

Tex. Penal Code § 38.04(b)(1) .............................................................................5

Tex. Penal Code § 38.04(b)(1)(A) ........................................................................2

**Rules**

Fed. R. App. P. 4(b) .............................................................................................1

Fed. R. Crim. P. 52(b) ..........................................................................................7

## Jurisdictional Statement

The district court had original jurisdiction over this case pursuant to 18 U.S.C. §3231. This Court has appellate jurisdiction under 28 U.S.C. §1291 and 18 U.S.C. §3742. The district court entered its latest written judgment on August 13, 2025, (ROA.178), and Appellant filed a timely notice of appeal the next day, (ROA.180). Fed. R. App. P. 4(b).

## Issues Presented for Review

Whether a defendant's "conduct" constituting a "supervised release violation" may be treated as a Grade B Violation under USSG §7B1.1(a)(2)(2024), now USSG §7C1.1(a)(2), where it is punishable by more than a year's imprisonment only when combined with a defendant's prior conviction?

Whether it is plain error to consider the retributive purposes of sentencing in respect to the defendant's conduct on supervised release?

**Statement of the Case**

## I.    Facts and Proceedings Below

In 2021, Appellant Daishawn Perry pleaded guilty to two counts of possessing or receiving a firearm while under indictment for evading arrest with a vehicle, a violation of 18 U.S.C. §922(n). *See* (ROA.99-106). He committed this federal offense when he was 18 years old. *See* (ROA.253, 255). The court imposed a sentence of time served and three years supervised release. *See* (ROA.126-127). Unfortunately, Appellant violated the conditions of release during this first term; he used marijuana and committed other violations not amounting to a crime. *See* (ROA.136-141). The court revoked his term of release, imposed six months imprisonment, and imposed another 30 months of supervision. *See* (ROA.152-155).

Four months after his release, Appellant occupied a car doing "donuts" – rapid circular movements – in an intersection. *See* (ROA.158). When police arrived, the car fled[1] and hit a retaining wall, and Appellant ran away on foot. *See* (ROA.158). The police caught him and he ultimately pleaded guilty to evading arrest. *See* (ROA.158). The offense was raised to a felony by operation Texas Penal Code §38.04(b)(1)(A), a State enhancement for people who commit evading arrest after a previous conviction for the same offense. *See* (ROA.158). But then the offense was

---

[1] Probation appeared to conclude that Appellant drove the car, *see* (ROA.158), but the district court found otherwise, *see* (ROA.233).

reduced back to the misdemeanor punishment range by operation of Texas Penal Code §12.44(a), a statute that permits the treatment of some state jail felonies as such. *See* (ROA.158). Appellant received 59 days in county jail. *See* (ROA.193).

Probation petitioned for revocation on the ground that Appellant violated the law by committing the evading arrest offense. *See* (ROA.157-158). It also alleged other criminal conduct in the same episode, but the government did not pursue those allegations at the revocation hearing. *See* (ROA.157-158, 190-192, 194). Further, Probation alleged that Appellant failed to attend drug counseling, failed to get a job, and got a traffic ticket in the Eastern District of Texas, where he was not supposed to go. *See* (ROA.158-159). It calculated an advisory range of 12-18 months imprisonment, the consequence of a Grade B Violation and a criminal history category of IV.[2] *See* (ROA.166). Grade B Violations are those in which the defendant's violative conduct constitutes an offense punishable by more than a year. *See* USSG §7B1.1(a)(2)(2004), now USSG §7C1.1.

At the revocation hearing, Appellant pleaded true to the evading arrest allegation and to all of the non-criminal allegations in the Petition. *See* (ROA.194-199). The defense then sought to articulate an objection to the treatment of Appellant's evading arrest violation as a Grade B Violation. Defense counsel argued that the act

---

[2] The defendant's criminal history score depended entirely on juvenile offenses, including one committed at age 13.

of evading arrest on foot, by itself, constituted a Grade C Violation. *See* (ROA.213). Grade B Violations, she contended, require conduct that would independently expose the defendant to more than a year's imprisonment, without considering enhancements based on prior conduct or convictions. *See* (ROA.213). The district court repeatedly said the objection was based merely on counsel's "feelings," (ROA.208, 211, 215), and appeared to suggest that it could not rely on the language of the Guidelines or Commentary absent a controlling case, *see* (ROA.208, 211, 215). It overruled the objection, *see* (ROA.220), and imposed 18 months imprisonment, the maximum of the range it believed applicable, *see* (ROA.241). It did not say that it would have imposed the same sentence had it sustained the defense objection.

Speaking to the defendant, the court said "I'm disappointed that you've done this. I'm punishing you for your conduct." (ROA.244). Earlier, trial counsel had recited the then-forthcoming (now operative) Guideline Commentary to Part C of Chapter 7. *See* (ROA.228). In it, the Sentencing Commission cautions that "[i]mposition of an appropriate punishment for new criminal conduct is not the primary goal of the revocation sentence." (ROA.228); USSG Ch. 7, Pt. C, intro. comment. The court responded:

> I agree it's not a primary goal. But just to make sure we're on the same page, this Court sees that as a legitimate concern, along with those things you mentioned. Holistically.

(ROA.228).

## II.    Summary of Argument

**A.**    Former Policy Statement 7B1.1(a) and 7B1.1(a)(2), now USSG §7C1.1(a) and §7C1.1(a)(2), define Grade B "supervised release violations" as "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." The Commentary reiterates that this inquiry is to be based on the defendant's "actual conduct." USSG §7B1.1, comment. (n. 1)(2024); USSG §7C1.1, comment. (n. 1).

Appellant's "actual conduct" while on supervised release was evading arrest on foot. This is punishable by one year's imprisonment, not more. *See* Tex. Penal Code §38.04(b). Although a prior conviction raised the possible punishment to two years, *see* Tex. Penal Code §38.04(b)(1), a prior conviction is not "conduct," and does not arise from a "supervised release violation." The plain language of the Policy Statements thus focus on the maximum punishment for the conduct committed on supervised release, before application of any enhancements based on prior convictions.

**B.**    This Court's precedent makes clear that district courts may not impose a higher revocation sentence to achieve retributive purposes. *United States v. Sanchez*, 900 F.3d 678, 683 (5th Cir. 2018). This is so whether the retribution is intended for the underlying offense or the conduct committed on supervised release. *See Sanchez*, 900 F.3d at 683-684, & n.3. The district court's explanation for the sentence clearly

5

exhibited a retributive purpose, and further made clear that it some effect on the outcome.

## Argument and Authorities

### I. The district court reversibly erred in concluding that Appellant committed a Grade B Violation of the terms of release.

### A. Standard of Review

This Court will review a preserved challenge to a revocation sentence under the plainly unreasonable standard. *See United States v. Miller,* 634 F.3d 841, 843 (5th Cir.2011).[3] It will decide whether the district court procedurally erred before consid-

---

[3]    To preserve review, Appellant respectfully submits that this Court should offer relief upon a finding that the sentence is "unreasonable" even if it is not plainly so. The "plainly unreasonable" standard of review comes from 18 U.S.C. §3742(e)(4), which directs the court of appeals to reverse a sentence that "was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable." However, *United States v. Booker*, 543 U.S. 220 (2005), "severed and excised" all of 18 U.S.C. §3742(e), replacing it with review for "reasonableness." *Booker*, 543 U.S. at 245 ("We conclude that this provision must be severed and excised, as must one other statutory section, § 3742(e), which depends upon the Guidelines' mandatory nature."). It did not distinguish between different portions of Subsection (e), which means its holding reaches Subsection (e)(3) and supervised release cases as well as any other.

To the extent that the "plain unreasonableness" standard requires this Court to affirm sentences premised on an incorrect proposition of law, Appellant submits that it does not correctly interpret 18 U.S.C. §3742. Although both Federal Rule of Criminal Procedure 52(b) and 18 U.S.C. §3742 used the term "plain" or "plainly" (respectively), the meaning of those words changes depending on the modified term. Modifying the word "error," it is natural to think that the term "plain" intends to distinguish between clear and uncertain classes of legal error. This also comports with the purpose of Rule 52(b), which is to create incentives for objections in district court. By contrast, when the term "plainly" modifies "unreasonable," it does not immediately call to mind the application of legal principles; rather, it is read more naturally as a limit on the exercise of discretionary authority to sentence within a statutory range. There is, moreover, no good purpose served by requiring the parties

ering the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. *See id.* But "[i]n reviewing for procedural error, [it] review(s) the application of the Guidelines de novo." *United States v. Sanchez*, 582 F. App'x 532 (5th Cir. 2014)(unpublished)(citing *United States v. McKinney,* 520 F.3d 425, 428 (5th Cir.2008)); *see also United States v. Burney*, 485 F. App'x 737, 738 (5th Cir. 2012)(unpublished)("Because Burney preserved his error below, we review the district court's interpretation of the Guidelines de novo, and its findings of fact for clear error. We review sentences imposed on the revocation of a supervised release under a 'plainly unreasonable' standard.")(citing *United States v. Evans*, 587 F.3d 667, 672 (5th Cir.2009); *United States v. Headrick*, 963 F.2d 777, 779 (5th Cir.1992); *Miller*, 634 F.3d at 843)).

Defense counsel steadfastly insisted on presenting the objection in spite of 22 occasions in which the district court took the floor. *See* (ROA.203, line 25; 206, line

---

to show that *preserved* legal errors are clear or obvious. To the contrary, this obligation stunts the development of binding precedent – this Court could affirm revocation sentences indefinitely without ever resolving ambiguous legal provisions, the parties unable to force the issue by preserving error -- and frustrates the Congressional purpose of sentencing uniformity. It also tends to undermine the parties' incentive to object in district court, since a preserved and unpreserved objection will both require proof of clear or obvious error. Notably, both 18 U.S.C. §3742(a) and §3742(e) call for reversal when a sentence is imposed "in violation of law," and 28 U.S.C. §2106 authorizes this Court to remand whenever it deems appropriate. This is ample statutory authority to vacate a sentence affected by a preserved Guideline error.

3; 207, lines 1, 5, 8; 208, lines 6, 17, 20; 209, lines 3, 5; 210, lines 21, 23; 211, line 2; 214, lines 4, 16, 18; 215, lines 8, 19; 216, line 15; 217, lines 1, 13; 218, line 3). Ultimately, she succeeded in communicating her objection: that Grade B Violations must be punishable by more than a year's imprisonment before consideration of prior convictions. *See* (ROA.213).

**B.    Discussion**

"A district court may impose any sentence upon revocation of supervised release that falls within the statutory maximum term allowed for the revocation sentence, but must consider the factors enumerated in 18 U.S.C. § 3553(a) and the policy statements before doing so." *United States v. Davis*, 602 F.3d 643, 646 (5th Cir. 2010)(citing 18 U.S.C. §3583(e); *United States v. McKinney*, 520 F.3d 425, 427 (5th Cir.2008)). The Sentencing Commission has promulgated a table of recommended prison sentences upon revocation of a term of supervised release. At the time of the proceedings below, the table occupied USSG §7B1.4. It has since been moved to USSG §7C1.5.

The table depends on two inputs: the defendant's Grade of Violation, and his or her Criminal History Category at the time of the initial sentencing. At the time of the hearing, Policy Statement 7B1.1 defined three grades of revocations. It said:

(a) There are three grades *of* probation and ***supervised release violations***:
(1) Grade A Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year

9

> that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years; (2) Grade B Violations--***conduct constituting*** any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;
> (3) Grade C Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

USSG §7B1.1(2024)(emphasis added). The court below believed that Appellant committed a Grade B Violation when he evaded arrest on foot during the term of supervised release. *see* (ROA.220). This was error under the plain language of the Policy Statement.

The relevant Policy Statement defines "supervised release violations." USSG §7B1.1(a)(2024). Accordingly, it refers only to conduct undertaken by the defendant while on the term of release. Conduct undertaken before the term has begun is not "supervised release violation" – the defendant cannot violate a term of supervised release that has not yet begun.

Further, the plain language (a)(2) makes clear that the focus of the analysis is the defendant's "conduct." It does not depend on the defendant's ***status*** as a prior convict, nor on the charge or outcome of any criminal proceeding. The revoking court simply determines what the defendant actually did during the term of release, and asks what the maximum punishment might be ***for that "conduct."*** This is confirmed by Application Note 1:

10

> Under 18 U.S.C. §§ 3563(a)(1) and 3583(d), a mandatory condition of probation and supervised release is that the defendant not commit another federal, state, or local crime. A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct. ***The grade of violation does not depend upon the conduct that is the subject of criminal charges*** or of which the defendant is convicted in a criminal proceeding. ***Rather, the grade of the violation is to be based on the defendant's actual conduct***.

USSG §7B1.1, comment. (n. 1)(2024)(emphasis added).

The district court treated Appellant's conduct – evading arrest on foot – as a Grade B Violation. *See* (ROA.220). It reached this conclusion because his prior evading arrest conviction rendered him eligible for felony punishment under Texas law. *See* (ROA.205). A punishment exceeding one year, however, requires more than the defendant's conduct committed during his term of release – it also required his prior conviction for the same offense, committed before his term of release commenced. This additional ingredient of a felony punishment can be thought of as conduct, but not as a "violation" of "supervised release," as required by 7B1.1(a). Or, it can be thought of as a status (recidivist, prior convict under the evading arrest statute, felon). But the Policy Statement does not consider all conduct, only "supervised release violations."

The fact that Texas actually punished the offense as a felony (before reducing the range again to misdemeanor status) is not dispositive. The Commentary makes

11

clear that "[t]he grade of violation does not depend upon the conduct that is the subject of criminal charges…" USSG §7B1.1, comment. (n. 1)(2024). As Probation noted in the colloquy, this often means that the defendant is exposed to a higher Grade of Violation than one might expect from pending chares or convictions sustained during the term of release. *See* (ROA.211). But the Commentary cuts both ways – here, the conduct, considered alone, is punishable by a less severe maximum than the Texas charge, which considered more than the defendant's conduct on release.

It does not appear that this Court has addressed the issue in a reported opinion. And, admittedly, many circuits have held that a revoking court may consider the impact of recidivism statutes in deciding the Grade of Violation under former §7B1.1. *See United States v. Ramos*, 979 F.3d 994, 996 (2d Cir. 2020); *United States v. Wynn*, 786 F.3d 339, 343 (4th Cir. 2015); *United States v. Crace*, 207 F.3d 833, 838 (6th Cir. 2000); *United States v. Trotter*, 270 F.3d 1150, 1155–56 (7th Cir. 2001); *United States v. Boisjolie*, 74 F.3d 1115, 1116–17 (11th Cir. 1996). As discussed above, however, the plain language of the Policy Statement refers to the defendant's conduct, and limits that conduct to "supervised release violations," not prior conduct, and not statuses.

A published opinion of the Seventh Circuit did agree with Appellant's analysis, but a subsequent panel found that it conflicted with earlier precedent, and disagreed with it. *See United States v. Lee*, 78 F.3d 1236, 1240–41 (7th Cir. 1996), *overruled by Trotter, supra*. Nonetheless, it reasoned persuasively.

In *Lee*, a federal supervisee committed a string of shop-lifting offenses, each punishable by nine months under Wisconsin law. *See Lee*, 78 F.3d at 1238. Because he had previously sustained shoplifting convictions, however, the district court held that his conduct was punishable by three years a piece, the consequence of a Wisconsin recidivism enhancement. *See id.* In the district court's view, this made the conduct a Grade B Violation of supervised release. *See id.* A panel of the Seventh Circuit reversed, holding "that the actual conduct a district court may consider in determining the grade of a violation of supervised release pursuant to § 7B1.1(a) does not include sentence enhancements for habitual or recidivist offenders." *Id*. at 1241.

The *Lee* panel reasoned that "the defendant's 'actual conduct'-rather than simply the maximum term of imprisonment to which he was exposed-determines the grade of his supervised release violation." *Id.* at 1240. And it noted multiple situations in which the possible outcomes of separate criminal proceedings begun during the term of supervised release might differ from the maximum punishment for the

defendant's "actual conduct." For example, a defendant might be under or over-charged by a state authority. *See id*. at 1240 ("…the offenses for which a defendant may be charged or convicted may vary from his actual conduct, and hence the commentary to § 7B1.1 specifies that the relevant factor to consider is the defendant's 'actual conduct.'")(citing USSG §7B1.1 comment (n.1)(2024), now USSG §7C1.1). In that case, the outcome of the charged case would not be the maximum for the defendant's "actual conduct." *See id.* Or "if an offender committed numerous misdemeanors-and thus faced exposure to more than a year of imprisonment if he received consecutive sentences-the guidelines would consider only the maximum possible punishment for the most serious offense." *Id*.; *see* USSG §7B1.1(b)(2024), now USSG §7C1.1(b). In that case too, the defendant could receive a higher sentence in separate criminal proceedings than the maximum term applicable to his most serious violation of release. *See id.* Accordingly, the court reasoned, the Policy Statement required the revoking court to decide the maximum punishment for the defendant's actual conduct undertaken during supervised release, ignoring its treatment by state authorities. *See id.* Finally, the court noted that USSG §7B1.4 (now USSG §7C1.5) took a defendant's criminal history into consideration on the table's horizontal axis. *See id.* at 1240-1241. It thought that this made further consideration of criminal history on the vertical axis gratuitous. *See id.*

As noted, a subsequent panel of the Seventh Circuit perceived a conflict between *Lee* and an earlier circuit precedent. *See Trotter*, 270 F.3d at 1155–56. It also disagreed with *Lee* on the merits. *See id*. And several other courts have permitted district courts to consider prior convictions in deciding the maximum punishment for conduct committed during the term of release. *See Ramos*, 979 F.3d at 996; *Wynn*, 786 F.3d at 343; *Crace*, 207 F.3d at 838; *Boisjolie*, 74 F.3d at1116–17. Close review of these authorities reveals five distinct arguments, none of which should persuade.

***First***, the Sixth and Seventh Circuits rely on Application Note One, which states that the Grade of Violation does not depend on the charges actually brought. *See Wynn*, 786 F.3d at 343; *Trotter*, 270 F.3d at 1155–56. But this only proves Appellant's point. The charges brought against Appellant exposed him to more than a year's imprisonment (until reduced again to a misdemeanor); but the "actual conduct" committed ***during the release term*** was punishable only by a year. *See* Tex. Penal Code §38.04. This is not a case where the releasee undertook conduct that could have been independently charged as a felony, and sought refuge in the State's charging decision. It's the opposite, a case where the defendant's charge, which incorporated the prior conviction as an element, exposed him to a higher penalty than could the defendant's conduct alone. The Commentary helps the defendant, not the government.

15

***Second***, the Second, Sixth and Seventh Circuits emphasized that other Guidelines freely use the defendant's criminal history in the computation of an offense level. *See Ramos*, 979 F.3d at 1001–02; *Crace*, 207 F.3d at 838; *Trotter*, 270 F.3d at 1155–56. They are right about that, but those provisions: 1) expressly reference the defendant' s criminal conviction in determining the offense level, *see* USSG §2K2.1(a)(1)(B)(" ...if … the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense"); USSG §2L1.2(b)(2)(A)("… the defendant engaged in criminal conduct that, at any time, resulted in-- A) a conviction for a felony offense … for which the sentence imposed was…"), 2) contain no limit to the defendant's "conduct" during a particular period of time, ***compare*** USSG §7B1.1(a)(2024)("supervised release violations"), and 3) carry Application Notes expressly authorizing the use of criminal convictions on both axes of the sentencing table, *see* USSG §2K2.1, comment. (n. 10)("Prior felony conviction(s) resulting in an increased base offense level under subsection (a)(1), (a)(2), (a)(3), (a)(4)(A), (a)(4)(B), or (a)(6) are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History)."); USSG §2L1.2, comment. (n. 3)("A conviction taken into account under subsection (b)(1), (b)(2), or (b)(3) is not excluded from consideration of whether that conviction receives crimi-

16

nal history points pursuant to Chapter Four, Part A (Criminal History).”). By contrast, Policy Statement 7B1.1 contains no mention of criminal history at all, and expressly refers to “supervised release violations,” and “conduct,” terms whose natural meaning together exclude prior convictions. It is, moreover, not the case that the Guidelines generally permit a defendant’s conduct to affect both axes of the sentencing table. Rather, conduct reduced to a prior criminal conviction cannot be considered in determining the defendant’s offense level, barring special rule. *See* USSG §§1B1.3, comment. (n. (5)(C)); USSG §4A1.2, comment. (n. 1).

*Third*, the Second and Seventh Circuits referenced decisions construing other sentencing provisions, namely 28 U.S.C. §994(o) and 18 U.S.C. §924(e). *See Trotter*, 270 F.3d at 1155–56 (citing *United States v. LaBonte*, 520 U.S. 751 (1997)); *Ramos*, 979 F.3d at 1000–01 (2d Cir. 2020)(citing *United States v. Rodriquez*, 553 U.S. 377, 386 (2008)). But these provisions contained no limitation to the defendant’s “actual conduct.” Rather they referred to the maximum punishment for an “offense.” Nor did those provisions contain any limit to the defendant’s conduct within a specified period of time. For that reason, those decisions shed little light on the meaning of USSG §7B1.1(2024), which asks district courts to determine the maximum punishment for “the conduct” constituting a “supervised release violation.”

*Fourth*, the Second, Fourth, Sixth and Eleventh Circuits emphasized that a second (or third) offense is considered more serious than the first. *See Ramos*, 979

17

F.3d at 1000–01; *Wynn*, 786 F.3d at 343; *Crace*, 207 F.3d at 838; *Boisjolie*, 74 F.3d at 1116. That is surely true, but it is not how the Sentencing Commission sought to measure the severity of the defendant's supervised release violations. Rather, the Commission limited to the district court to the punishment for the defendant's "actual conduct" to the extent that it constituted a "supervised release violation." After all, the Commission was promulgating a sentencing table for people who had violated the terms of release. All of them had been previously convicted of something; use of recidivism enhancements would render the one year threshold for Grade B Violations largely superfluous.

*Fifth*, the Eleventh Circuit has reasoned that when a defendant commits a crime punishable by a recidivism enhancement, the defendant's "criminal conduct [i]s not merely the commission of the crime [], but rather his commission of [it] as a habitual offender." *Boisjolie*, 74 F.3d at 1116. The Eleventh Circuit is correct that a defendant's prior convictions come from criminal conduct (we hope). But that conduct is not a "supervised release violation" because it does not occur during the term of release. Further, the defendant's "commission of a crime as a habitual offender" is not "actual conduct" – it is a mixture of conduct and status. The Policy Statement looks only at the conduct.

Along the same lines, the Second and Fourth Circuits said that:

the note "instructs that in grading a violation of supervised release, a district court may consider not only conduct for which a defendant is

18

prosecuted in a criminal case, but all of a defendant's conduct." And a direction to consider "all of a defendant's conduct" naturally also includes "all conduct that affects the maximum penalties for a supervised release violation."

*Ramos*, 979 F.3d at 1000–01 (quoting *Wynn*, 786 F.3d at 343.). This shows the analytical error quite starkly. The Policy Statement nowhere instructs the revoking court to consider "all of the defendant's conduct." Rather, it refers to conduct or "actual conduct" that is a "supervised release violation."

This Court will "apply ordinary rules of statutory construction to the Sentencing Guidelines, and if the language of the Guidelines is unambiguous the inquiry ends with the plain meaning of that language." *United States v. Rabanal*, 508 F.3d 741, 743 (5th Cir. 2007). The plain language of USSG §7B1.1(a) and Application Note One yield a clear and obvious answer. These provisions ask the district court to determine the maximum punishment for the defendant's "actual conduct" to the extent that it constituted a "supervised release violation." The defendant's actual conduct was running from a police officer on foot, an offense punishable by one year's imprisonment, not more. To get a sentence exceeding one year requires another ingredient, the defendant's status as a prior convict, or his conduct before the term of release, which, of course, cannot violate conditions of release not yet imposed.

This Court has held that an error in calculating the advisory range in USSG §7B1.4 (now USSG §7C1.5) affects the defendant's substantial rights, just like an

19

error in calculating the Guidelines. *See United States v. Waldrip*, 783 F. App'x 369, 370–71 (5th Cir. 2019)(unpublished). Indeed, it has held as much a cases involving unpreserved error, where the appealing party bears the burden to show prejudice. *See Waldrip*, 783 F. App'x at 370–71. In cases involving preserved error, the proponent of the sentence must show harmlessness. *See United States v. Olano*, 507 U.S. 725, 734 (1993). It cannot do so here. The district court imposed sentence at the top of the range it believed applicable. It conducted a colloquy about the issue of twenty pages, *see* (ROA.201-221), clearly demonstrating that the answer to the legal question mattered. And it never said that the sentence would be the same if it had granted the defense objection, *see* (ROA.240-248), even though it knew exactly what the range would be if it had done so.

This Court should vacate the sentence.

## II. The district court plainly erred in considering the need for the sentence imposed to impose just punishment for the defendant's conduct on supervised release.

### A. Standard of Review

Unpreserved error should be reversed where the appealing party shows: 1) error, 2) that is clear or obvious, 3) that affects substantial rights, and 4) that seriously affects the fairness, integrity, or public reputation  of judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732 (1993).

**B.    Discussion**

**1.    The court clearly or obviously erred under controlling precedent.**

In initial sentencings, 18 U.S.C. §3553(a) instructs the district court to consider all of the factors enumerated in that provision before imposing sentence. Those found in §3553(a)(2) carry a special role: the court must impose a sentence "sufficient but not greater than necessary":

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner…

18 U.S.C. §3553(a)(2). The purposes found in Subsection A – the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense – have been described by the Supreme Court and this Court as the "retributive purposes." *Esteras v. United States*, 606 U.S. 185, 188 (2025); *United States v. Sanchez*, 900 F.3d 678, 683 (5th Cir. 2018).

Upon finding a violation of the term of supervised release, 18 U.S.C. §3583(e)(3) authorizes the district court to revoke the term of release and impose a sentence of imprisonment. However, the same statute says that it must "consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. §3583(e). As the Supreme Court recently observed:

> Conspicuously missing from this list is § 3553(a)(2)(A), which directs a district court to consider "the need for the sentence imposed" "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

*Esteras*, 606 U.S. at 188. Recognizing the obvious import of this deliberate elision, the Supreme Court held that "[d]istrict courts cannot consider § 3553(a)(2)(A) when revoking supervised release." *Id*. at 195.

The district court made quite clear that retributive concerns drove the sentence, and were indeed a primary consideration. It said as much in terms, telling the defendant, "I'm disappointed that you've done this. I'm punishing you for your conduct." (ROA.244). This Court can "take the district court at its clear and plain word." *United States v. Castro-Alfonso*, 841 F.3d 292, 298 (5th Cir. 2016). The district court can use imprisonment to achieve deterrence and incapacitation. But it cannot impose imprisonment, in a revocation case, to "provide just punishment for the offense." *Esteras*, 606 U.S. at __, 45 S.Ct. at 2036 (quoting 18 U.S.C. 3553(a)(2)(A). Yet that's exactly what it said it was doing here.

This is confirmed by the court's response when trial counsel recited the then-forthcoming Guideline Commentary. Reading the current introductory Commentary to Part 7C of the Guideline Manual, counsel stressed that "[i]mposition of an appropriate punishment for new criminal conduct is not the primary goal of the revocation sentence." (ROA.228). Rather than disavowing any intent to engage in retribution, the district court said:

> I agree it's not a primary goal. But just to make sure we're on the same page, this Court sees that as a legitimate concern, along with those things you mentioned. Holistically.

(ROA.228).

Finally, there is the overarching tenor of the hearing. The court emphasized its prior "mercy," granting time served and then a six month revocation term, *see* (ROA.242, 244), but said that the defendant's conduct had "absolutely showed out on me this time." (ROA.242). And it explained its reaction to the defendant's violation conduct in exceedingly personal terms. It said that the conduct left the court "heartbroken." (ROA.236, 237). It said to the defendant that when he broke the law on release, " you and I were in a relationship." (ROA.248). And it that the defendant's failure to call his Probation Officer upon receipt of a traffic ticket in another judicial district "is very telling as to your character," (ROA.244). The district court certainly took a laudable interest in the future of the young defendant, for whom it obviously wanted he best. *See* (ROA.235, 237, 248)("I'm cheering for you."). And it mixed in encouraging words with its reprimands. *See* (ROA.245)("And so I want more for you, because you are a smart guy, okay?"). To be clear, none of this would necessarily show an inappropriate focus on retribution on its own. But when mixed with the court's explicit statement to the defendant that it intended "to punish you for your conduct," the personal tone of the proceedings tends to confirm a retributive purpose.

It does appear that the district court intended to punish, for the most part, the defendant's conduct on release rather than the underlying offense. *See* (ROA.222, 228, 242). And *Esteras*, by itself, does not proscribe retribution for the defendant's conduct on release, as opposed to the underlying offense. *See Esteras*, 606 U.S. at 193-195. Neither, however, does the opinion establish that the district court may consider it. *See id*. at 205 (Sotomayor, J., concurring)("Because the majority frames the question as one about retribution for the original offense, it never decides whether the supervised-release statute precludes courts from exacting retribution for the defendant's supervised-release violation.").

This Court's pre-*Esteras* precedent, however, does answer that question and quite clearly. This Court has flatly stated that:

> although district courts are free to consider the aims of deterrence and incapacitation, they may not base their revocation sentences on any perceived need:
> "to reflect the seriousness of the [supervised-release violation]";
> "to promote respect for the law"; or
> "to provide just punishment for the [supervised-release violation]."

*Sanchez*, 900 F.3d at 683-684 (quoting 18 U.S.C. 3553(a)(2)(A))(brackets added by *Sanchez*). It explained that while:

> Section 3553(a)(2)(A) as written refers to the seriousness of and just punishment for "the offense," … our court implicitly has understood to mean the conduct that constituted the violation of the conditions of supervised release.

24

*Id.* at 683-684, n.3 (citing *United States v. Rivera*, 784 F.3d 1012, 1017 (5ᵗʰ Cir. 2015)). *Esteras* did not overrule this clear precedent. As such, *Sanchez* establishes clear or obvious error.

## 2.    The error affects substantial rights.

There is, moreover, "a reasonable probability" that this factor affected the sentence, which suffices to show an effect on substantial rights. *See Molina-Martinez v. United States*, 578 U.S. 189, 191 (2016) The court said explicitly that punishment figured in its "holistic" view of the necessary punishment. This necessarily implies that the consideration played a role in the selection of the sentence, and that the sentence might have been different if it were disregarded. Further, the retributive tenor of the conversation between the defendant, counsel and the court strongly suggests that it may have played an outsized role in the outcome. Importantly, "the reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, n.9 (2004).

## 3.    The error merits relief.

Finally, the error affects the fairness, integrity, and public reputation of judicial proceedings. The error in question is "judicial error," likely requires unnecessary

25

imprisonment, and may be corrected without the burden of a new trial. When combined, these factors generally require discretionary relief on the fourth prong. *See Rosales-Mireles v. United States*, 585 U.S. 129, 140-142 (2018); *accord United States v. Perez-Mateo*, 926 F.3d 216, 218 (5th Cir. 2019); *United States v. Herndon*, 807 F. App'x 286, 291 (5th Cir. 2020) *United States v. Johnson*, 956 F.3d 740, 747 (5th Cir. 2020)(noting that "judicial error" weighs in favor of relief).

## Conclusion

Appellant asks this Court to reverse Appellant's conviction, or, alternatively, vacate the sentence and remand for resentencing.

Respectfully submitted,

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

<u>/s/ Kevin Joel Page</u>
KEVIN JOEL PAGE
ASSISTANT FEDERAL PUBLIC DEFENDER
525 South Griffin
Suite 629
Dallas, Texas 75202
(214) 767-2746

*Counsel for Appellant*

## Certificate of Service

On November 7, 2025, I filed this Brief through the Court's ECF system. Opposing Counsel has therefore been served. Further I certify that I sent a paper copy via regular mail to Mr. Perry.

/s/ Kevin Joel Page

## Certificate of Compliance

This brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) because it contains 5,885 words excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii). The brief was prepared using MS Word, Times New Roman 14-point font, with footnotes in 12-point font.

/s/ Kevin Joel Page